1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11     JOSE E. ROMAN-ALVARADO,                CASE NO. C11-5749

12                           Plaintiff,        ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
13             v.                              MOTION FOR SUMMARY
                                               JUDGMENT
14     CITY OF LAKEWOOD, a municipal
       corporation; MATTHEW H. BROWN, in
15     his official and individual capacities and
       "JANE DOE" BROWN, as a marital
16     community; JEFFERY K. HALL, in his
       official and individual capacities and
17     "JANE DOE" HALL, as a marital
       community, and "JOHN AND JANE
18     DOES 1-10",

19                           Defendants.

20             This matter comes before the Court on Defendants' motion for summary judgment.  Dkt.

21     23.  The Court has considered the pleadings in support of and in opposition to the motion and the

22     record herein.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 1

**INTRODUCTION AND BACKGROUND**

1

2        This is an action against law enforcement personnel and the City of Lakewood,

3   Washington, asserting an unreasonable seizure through the use of excessive force in violation of

4   the Fourth and Fourteenth Amendments. Dkt. 1 p. 5. The Complaint asserts municipal liability

5   on the basis of a failure "to properly train and/or supervise its police officers thereby creating a

6   custom pattern and/or policy that permits the use of excessive and unreasonable force to seize

7   individuals suspected of misdemeanor offenses." *Id.* p. 6.  The Complaint also asserts a state law

8   claim for assault and/or battery for the unreasonable conduct of the police officers and City of

9   Lakewood.

10       On Christmas morning, 2008, Lakewood Police Officer Austin Lee responded to a noise

11  complaint at a duplex in Lakewood, Washington.  Dkt. 27 pp. 6-7.  Officer Lee initially

12  determined that the loud music was emanating from a pickup truck parked in front of the duplex.

13  *Id.*  Officer Lee contacted a female resident and asked for the owner of the vehicle.  *Id.*  The

14  female went back into the duplex to relate the message and two male individuals came around

15  the side of the duplex to contact Officer Lee.  *Id.*  Santiago Roman identified himself as the

16  owner of the pickup and resident of the address.  *Id.*  The Plaintiff Jose Roman-Alvarado

17  identified himself as Santiago's brother and indicated he lived next door.  *Id.*  Officer Lee

18  advised Santiago that the music was unreasonably loud and needed to be tuned down. Dkt. 27 p.

19  7; Dkt. 29-2 p. 3.   Santiago disagreed and stated that the complaining neighbor was simply

20  harassing him.  Santiago stated he had no reason to turn down the music as he was at his own

21  residence.  *Id.*  At this point Plaintiff joined in the conversation, arguing with Officer Lee that the

22  music wasn't loud and that the Officer had no business being there.  *Id.*  Officer Lee then

23  requested Santiago's identification and advised Santiago that he was going to get a citation for

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 2

1  violation of the noise ordinance.  *Id.*  In response, Santiago turned around and started heading for

2  his residence.  Id.  Officer Lee then informed him that he was not free to leave.  Santiago then

3  provided his Washington State identification to Officer Lee.  *Id.*  As the two brothers continued

4  to argue with the officer, two females came out from the residence, escalating the confrontation.

5  *Id*.  Officer Lee noticed that Plaintiff was placing his hands in his sweatshirt pockets and ordered

6  that he remove his hands from his pockets and that he leave the scene.  Dkt. 27 p. 7; Dkt. 29-2 p.

7  5.  Plaintiff did not leave, as he felt that he could remain on his property and that his appearance

8  was necessary to help interpret for his brother.  Dkt. 29-5 pp.5-7.  Feeling outnumbered by a

9  growing hostile crowd, Officer Lee called for backup.  Dkt. 27 p. 7; Dkt. 29-2 p. 5.

10        Officers Matthew Brown and Jeffery Hall arrived at the scene.  *Id.*  Officer Brown

11  describes the event as follows:

12     Officer Hall (LK100) and I arrived at 1055 hrs and found Officer Lee standing in
       the front yard.  Santiago Roman Alvarado was sitting on the front stoop of the house,
13     a Hispanic female was standing behind him with the door open, another Hispanic
       female was standing on the grass, and Jose Santiago Alvarado was standing next to
14     her.  The ground was littered with a tire iron and several long screwdrivers.

15     As I approached Officer Lee pointed at Santiago and stated, "That guy is getting a
       ticket."  To remove any other possible threats while Santiago was cited I told the
16     other three subjects they needed to leave and go inside.  The two women started to
       walk inside 15307 Washington without complaint.  Jose took one step back into the
17     yard at 15313 Washington Av and said, "That's my brother. I'm gonna stay right
       here......."
18

19     Jose was wearing a black zip-up sweatshirt with two front pockets. I could see that
       both pockets were bulging with unknown items and when he turned slightly I could
20     see something metallic in his right pocket.  I told him again that he needed to step
       inside while we dealt with Santiago and that if I had to continue to deal with him
21     instead of assist Officer Lee he would be arrested for obstructing.  Jose took a step
       towards his truck and again told me, "I don't have to, this is my yard."  I again told
22     him that if I was not able to help Officer Lee because of his presence he would be
       arrested for obstructing.

23     Jose walked to the back of his truck and began to place both hands out of view
24     inside the open bed.  Because of the presence of a number of tools that could be

weapons on the ground, I was fearful that Jose might try to access something similar in the bed of his truck. I took a step towards him and demanded him to remove his hands and go inside his house.

Jose continued to ignore my directives and although he removed his hands he stood his ground and again told me that he could stay in his yard. Because the situation was already tense and there was the presence of multiple tools that could be used as weapons I told Jose that he was under arrest.

I grabbed Jose by his left wrist and told him to turn around and place both hands behind his back. Jose immediately tensed up, turned away from me towards his front door, and tried to pull his left hand away from me. I reached over Jose's right shoulder, grabbed him by his left armpit and took him to the grassy area in front of the home. As I was doing so I could feel his right arm moving backwards as if it was reaching for his pocket.

Once we were on the ground his left arm was above his head but his right hand was buried underneath his body with his hand in the vicinity of his pocket. I told Jose to slowly remove his hand but instead he used his left hand and his legs to try and lift himself off the ground. I was concerned that Jose was attempting to access whatever metallic item was in his pocket and that his continued resistive behavior would be dangerous to myself and my other partners. I struck Jose once in the head with a closed fist to gain compliance.

Dkt. 25 pp. 4. See also Dkt. 29-3 pp. 4-14.

Officer Hall describes the incident as follows:

On 12-25-09 at approximately 1157 a.m.my partner, Matt Brown, arrived I arrived to assist Officer Austin Lee with non-compliant subjects at a noise complaint located at 15307 Washington Ave SW in Lakewood. Upon arrival, Officer Brown made verbal contact with a subject later identified as Jose E. Roman Alvarado who was arguing with Officer Lee. Officer Brown told the subject to go back inside his own residence after it was determined that he had no cause to be involved in Officer Lee's police action and did not reside at the problem address. The subject refused to comply with Officer Brown's orders at which time he was arrested for obstructing. The subject then resisted arrest and was taken to the ground by Officer Brown. Tensions quickly rose as people came out of both residences to protest.

I assisted Officer Brown by holding the subject down with my knee on his lower torso while handcuffing was attempted. The subject resisted cuffing and would not place his hands behind his back for Officer Brown. My main focus was on the family members who were now aggressively approaching us in a confrontational manner. The subject under me was attempting to get up, so I made a five second taser application between his shoulders. The subject then complied and was handcuffed. I holstered my taser and assisted Brown with escorting the subject to

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 4

1    the patrol car. The subject said he was ok and did not need medical aid.

2    Dkt. 26 p. 4.  See also Dkt.29-4 pp. 3-11.

3        Plaintiff Jose Roman-Alvarado's version of the facts differ from that of the officers. The

4    Plaintiff testifies that he informed Officer Lee that his presence was necessary to interpret the

5    officer's words for his brother, Santiago, and that he never raised his voice when speaking to

6    Officer Lee.  Dkt. 29-5 pp. 4-5, 8.  He states that he was standing at the back of his pickup truck

7    when Officers Brown and Hall arrived and approached him.  *Id*. p. 9.  According to Jose, Officer

8    Brown told Jose that he had five seconds to go inside his house, that he was complying and

9    turned and started walking towards his house when he was tackled from behind.  *Id*. pp. 10-11.

10   José testifies that he landed face down, with his right arm underneath his body and his left arm

11   behind him. The officer's body was on top of him, so that he could not move.  Id. pp. 12-13.  Jose

12   acknowledges that the officer told him to pull his right arm out, but Plaintiff was unable to do so

13   because he was pinned down.  *Id*. p. 13.  Plaintiff denies that he struggled with the officers or

14   that he ever tried to rise up from the ground.  *Id*.  Plaintiff states that the second officer (Hall)

15   also got on top of Plaintiff.  Id.  He states that he was kicked and hit in the head and ribs, and

16   ultimately tased.  Id. pp. 13-15.

17       Plaintiff also testified that during the altercation his shoulder was dislocated, his

18   head also struck the ground, and he was bleeding from his mouth because he had been

19   wearing braces.  *Id*. pp. 13, 15-16. Plaintiff was ultimately handcuffed and taken into custody.

20                        **SUMMARY JUDGMENT STANDARDS**

21       Summary judgment is proper only if the pleadings, the discovery and disclosure materials

22   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

23

24

1  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is

2  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

3  showing on an essential element of a claim in the case on which the nonmoving party has the

4  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

5  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

6  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586

7  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

8  metaphysical doubt.").  See also Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

9  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

10  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

11  *Lobby, Inc*., 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

12  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

13        The determination of the existence of a material fact is often a close question.  The court

14  must resolve any factual issues of controversy in favor of the nonmoving party only when the

15  facts specifically attested by that party contradict facts specifically attested by the moving party.

16  The nonmoving party may not merely state that it will discredit the moving party's evidence at

17  trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect.*

18  *Service Inc*., 809 F.2d at 630.  Conclusory, non specific statements in affidavits are not

19  sufficient, and "missing facts" will not be "presumed."  *Lujan v. National Wildlife Federation*,

20  497 U.S. 871, 888-89 (1990).

21  **FOURTH AMENDMENT - EXCESSIVE FORCE**

22        A Fourth Amendment claim of excessive force is analyzed under the framework outlined

23  by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).  All claims that law

24

1    enforcement officers have used excessive force in the course of an arrest must be analyzed under

2    the Fourth Amendment and its "reasonableness" standard.  See *Graham v. Connor*, 490 U.S. at

3    395; *Smith v. City of Hemet*, 394 F.3d 689, 700-01 (2005).  The analysis requires balancing the

4    "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental

5    interests at stake" to determine whether the use of force was objectively reasonable under the

6    circumstances.  *Graham*, 490 U.S. at 396.  The 'reasonableness' inquiry in an excessive force

7    case is an objective one: The question is whether the officers' actions are 'objectively reasonable'

8    in light of the facts and circumstances confronting them.  *Graham*, 490 U.S. at 397; *Smith,* 394

9    F.3d 701.  The relevant factors in the Fourth Amendment reasonableness inquiry include the

10   severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

11   officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

12   flight.  *Graham*, 490 U.S. at 396.  These factors, however, are not exclusive.  The court must

13   examine the totality of the circumstances and consider whatever specific factors may be

14   appropriate in a particular case.  *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011).

15   If the evidence, viewed in the light most favorable to Roman-Alvarado could support a finding of

16   excessive force, then the Defendants are not entitled to summary judgment.   Because the

17   excessive force inquiry nearly always requires a jury to sift through disputed factual contentions,

18   summary judgment in excessive force cases should be granted sparingly.  *Smith,* 394 F.3d at 701;

19   *Glenn,* 673 F.3d at 871; *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  While police

20   officers need not employ the least intrusive degree of force possible during an arrest, they must

21   at least consider less intrusive methods, and the presence of feasible alternatives is a relevant

22   consideration in an excessive force analysis.  *Bryan v. MacPherson*, 630 F.3d 805, 831 n. 15 (9th

23

24

1 | Cir. 2010).  If the level of force used was excessive, the officers violated a clearly established

2 | constitutional right.  See *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011).

3 |      It is evident from the record that there are material issues of fact regarding the necessity

4 | for the amount of force used in the arrest of Roman-Alverado.  In an effort to counter these

5 | differences, the Defendants respond with the assertion that Plaintiff's version of the event is a

6 | "complete fabrication."   See Dkt. 31 p. 2.  It is for the trier of fact to assess the truth of the

7 | matter, not the Court on motion for summary judgment.

8 |      The Defendants are not entitled to summary judgment of the Fourth Amendment

9 | excessive force claim.

10 |                                        **QUALIFIED IMMUNITY**

11 |      Defendants assert that the Officers are entitled to qualified immunity.

12 |      The doctrine of qualified immunity protects government officials from liability for civil

13 | damages insofar as their conduct does not violate clearly established statutory or constitutional

14 | rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231

15 | (2009).

16 |      Here, Plaintiff had a clearly established constitutional right to be free from the use of

17 | excessive force in effectuating an arrest.  As previously determined, the issue of whether there

18 | existed excessive force is a question of fact for the jury.  The police officers are not entitled to

19 | qualified immunity at this stage because there are disputed issues of fact as to whether they used

20 | excessive force to make an arrest.

21 |

22 |

23 |

24 |

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 8

1       **MUNICIPAL LIABILITY**

2           Defendants seek dismissal of all municipal liability claims.

3           Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a public

4    entity defendant cannot be held liable under a theory of *respondeat superior*; rather, a defendant

5    must act as a lawmaker or one "whose edicts may fairly be said to represent official policy." *Id.,*

6    at 693.  A plaintiff may establish the policy, practice, or custom requirement for municipal

7    liability under 42 U.S.C § 1983 through proof that (1) a public entity employee committed the

8    alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom,

9    which constitutes the standard operating procedure of the local government entity; or (2) an

10   official with final policy-making authority ratified a subordinate's unconstitutional decision or

11   action.  *Avalos v. Baca*, 596 F.3d 583, 587-88 (9th Cir. 2010).

12          Plaintiff argues that his expert witness report opines that the City of Lakewood's force

13   review process in this case failed to identify excessive force and intervene and thus, raises a

14   question of fact regarding the policies or custom of permitting the use of excessive force.  See

15   Dkt. 28 pp. 16-17.

16          A single failure to discipline an officer, or the fact that a policymaker concludes that the

17   defendant officer's actions were in keeping with the applicable policies and procedures, is an

18   insufficient basis to impose municipal liability.  See  *Kanae v. Hodson*, 294 F.Supp.2d 1179,

19   1191 (D. Hawaii 2003).   As aptly explained by the court in *Kanae*:

20          The law does not say that every failure to discipline an officer who has shot someone is
            evidence of a "whitewash" policy or some other policy of "sham" investigations. The law
21          does not say that, whenever an investigative group accepts an officer's version over a
            victim's differing version, this acceptance establishes a policy for which a municipality
22          may be held liable under § 1983. If that were the law, counties might as well never
            conduct internal investigations and might as well always admit liability. But that is not
23          the law. The law clearly requires "something more."

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 9

1    Id. at 1191.  See also *Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848 (5th Cir. 2009)

2    (holding that there was no ratification of use of excessive force where the Chief of Police

3    determined after investigation that the officers complied with department policies); *Santiago v.*

4    *Fenton*, 891 F.2d 373, 382 (1st Cir.1989)(holding that the failure of a police department to

5    discipline in a specific instance is not an adequate basis for municipal liability).

6            Plaintiff's federal claims against the City of Lakewood are subject to dismissal.

7                                      **STATE LAW CLAIMS**

8            Plaintiffs claims for assault and/or battery.  Generally, a police officer making an arrest is

9    justified in using sufficient force to subdue a prisoner, however he becomes a tortfeasor and is

10   liable as such for assault and battery if unnecessary violence or excessive force is used in

11   accomplishing the arrest.  *Boyles v. City of Kennewick*, 62 Wn.App.174, 176 (1991).  State

12   qualified immunity is not available for claims of assault and battery arising out of the use of

13   excessive force to effectuate an arrest.  *Staats v. Brown*, 139 Wn.2d 757, 780 (2000).

14           As previously discussed, there are genuine issues of material fact as to whether the

15   officers used excessive force.  The individual Defendant police officers are not entitled to

16   summary judgment on the state law claim for assault and/or battery.

17           Plaintiff has failed to produce evidence from which a jury could conclude that the use of

18   excessive force is the result of inadequate supervision or training by the City of Lakewood.  For

19   that reason, Plaintiff cannot establish causation, and cannot prevail in a claim for negligent

20   supervision or training against the municipality.  See *Goldsmith v. Snohomish County*,

21   558 F.Supp.2d 1140, 1157 (W.D. Wash. 2008).  The City of Lakewood is entitled to summary

22   judgment on Plaintiff's state law claims.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 10

1

2                                     **CONCLUSION**

3          The Court, having considered the motion, response, reply, and relevant documents herein,

4   finds the municipal defendant, City of Lakewood, is entitled to summary judgment as to all

5   causes of action.  The Defendant Police officers are not entitled to summary judgment for the

6   Fourth Amendment claim of excessive force and state law claims of assault and/or battery.

7          Therefore, it is hereby **ORDERED:**

8     1.  Defendants' Motion for Partial Summary Judgment (Dkt. 23) is **GRANTED IN**

9          **PART AND DENIED IN PART**.

10    2.  All causes of action, federal and state, asserted against the City of Lakewood, are

11         **DISMISSED WITH PREJUDICE**.

12    3.  The causes of action asserted against Defendants Matthew Brown and Jeffery Hall

13         under 42 U.S.C. § 1983 for excessive use of force under the Fourth Amendment, and

14         for assault and/or battery, may proceed to trial.

15    Dated this 23rd day of August, 2012.

16

17

18                                    ROBERT J. BRYAN
                                      United States District Judge

19

20

21

22

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 11